**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WIOLETTA SMOTER *et al.*, *on behalf of themselves and all others similarly situated*,<br>Plaintiff<br><br>v.<br><br>THE MENTHOLATUM COMPANY, INC.,<br>Defendant | No. 24 CV 4155<br><br>Judge Jeremy C. Daniel |

## ORDER

The defendant's Motion to Dismiss [36] is GRANTED. Civil case terminated.

## STATEMENT

This is a putative class action brought on behalf of consumers who purchased OXY brand acne treatments sold by the defendant, The Mentholatum Company, Inc., ("Mentholatum"). Named plaintiffs Wioletta Smoter and Joanna Taraszka allege that they purchased "OXY® Advanced Care™ Rapid Spot Treatment" and "OXY® Advanced Care™ Soothing Cream Acne Cleanser," both of which contain the active ingredient benzoyl peroxide ("BPO") at a concentration of 10%. (R. 1. ¶¶ 1, 15, 52–53.)[1] According to the plaintiffs, BPO can decay into the carcinogen benzene at high temperatures. (*Id.* ¶¶ 26–29.) However, packaging for the OXY brand products at issue do not list benzene as an ingredient, and do not warn that the products may contain benzene. (*Id.* ¶ 33.)

The plaintiffs bring a claim for unjust enrichment and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*. (*Id.* ¶¶ 69, 80.) They allege that, had the products at issue listed benzene as an ingredient, they would not have purchased, or would have paid less for, the products. (*Id.* ¶¶ 78, 83.)

Mentholatum moves to dismiss, arguing that the plaintiffs' claims are preempted by the Food, Drug, and Cosmetics Act ("FDCA") and Food and Drug Administration

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

("FDA") regulations governing the production and labelling of drugs. (*See generally* R. 36.)

Preemption stems from the Constitution's declaration that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2; *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) ("Where state and federal law directly conflict, state law must give way.") Because preemption is an affirmative defense, granting a motion to dismiss rooted in preemption is only proper when the allegations in the complaint establish every element of the affirmative defense. *See Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 788 (N.D. Ill. 2023). The Court may also consider elaborations or clarifications provided by the plaintiffs in their opposition to the motion to dismiss. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (quotation marks omitted).

The FDCA provides that no state may "establish . . . any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement" of the FDCA. 21 U.S.C. § 379r(a). It follows that, to avoid preemption, a state law claim of misleading labeling must allege a violation of the FDCA. *See Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021). Under the FDCA, the FDA has the power to regulate drugs, including Over-the-Counter ("OTC") medications. 21 U.S.C. § 393. For OTC medication, the FDA uses a monograph system. *See Novotney,* 683 F. Supp. 3d at 789. In short, for a given category of OTC medication, the FDA publishes a monograph—a detailed regulation—listing the acceptable active ingredients, concentrations, and labeling for medications in that category. *Id.* Products that comply with the monograph are "safe and effective and not misbranded." *Id.* As relevant here, the FDA publishes "Over-the-Counter (OTC) Monograph M006: Topical Acne Drug Products for Over-the-Counter Human Use," which lists acceptable active ingredient combinations for topical OTC acne medications, and provides acceptable language to use on labels for those products. 21 C.F.R. § 333.301, *et seq*.

The parties agree that the OXY products at issue are regulated by monograph M006. (*See* R. 37 at 14 (citing to the monograph as dispositive); *see also* R. 40 at 10 (accepting that "[t]he monograph sets forth the labeling requirements for BPO products").) The monograph lists BPO at 10% concentration as an acceptable active ingredient. 21 C.F.R. § 333.310. The provided language for labelling topical OTC acne medication does not include warnings about benzene. 21 C.F.R. § 333.350. Therefore, to the extent the plaintiffs argue the labels of the OXY products should have warned them of the possibility of benzene or included benzene as an ingredient, these claims are preempted by federal law and must fail. In rejecting these claims, the Court reaches the same conclusion as other courts in this district and across the nation considering labeling claims based on the decay of BPO into benzene. *See Williams v. Galderma Lab'ys, L.P.*, No. 24 CV 2222, 2024 WL 4213220, at *2–4 (N.D. Ill. Sept. 17, 2024)

(rejecting benzene label and ingredient claims); *Howard v. Alchemee, LLC,* No. 24 C 1834, 2024 WL 4272931, at *7 (C.D. Cal. Sept. 19, 2024) (same).

However, the plaintiffs argue they are not bringing a pure labelling claim. Instead, they assert that Mentholatum fails to comply with FDA-issued current good manufacturing practices ("cGMPs"), and that Mentholatum's failure results in benzene in the OXY products at issue here. (R. 40 at 4.) According to the plaintiffs the products are "adulterated because they had the potential to degrade into benzene," a potential which arises from non-compliance with cGMPs. (*Id.* at 9.) Specifically, the plaintiffs allege that Mentholatum could have included antioxidants in their product, which would have prevented the decomposition of BPO into benzene. (*Id.* at 11.) In the plaintiffs' view, failing to include an antioxidant violated the cGMP requiring "scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers closures, in process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality, and purity." (*Id.* at 10–11 (citing 21 C.F.R. § 211.160).) In support, the plaintiffs rely on cases in which courts have held that "[c]onsumer fraud claims based on violations of cGMPs are *not* preempted." (R. 40 at 11) (emphasis in original) (citing *Williams*, 2024 WL 4213220, at *12–13; *Barnes v. Unilever United States Inc.,* No. 21 C 6191, 2023 WL 2456385 at *5–7, (N.D. Ill. Mar. 11, 2024).)

But the claims allowed to proceed in *Williams* and *Barnes* are distinguishable from the plaintiffs' claims here. In *Barnes*, the claim was a manufacturing defect claim—in essence, that the presence of benzene was due to some defect in the manufacturing process. *See* 2023 WL 2456385 at *6. In *Williams,* the plaintiff claimed that an antiperspirant containing benzene was "adulterated" as defined by both state and federal law—*i.e.*, not manufactured in accordance with cGMPs. *See* 2024 WL 4213220, at *5. Here the plaintiffs assert that the OXY products are adulterated because they omit an ingredient not otherwise required by law. In other words, the plaintiffs' claim is not that Mentholatum is not following its OXY recipe correctly, but that the recipe should contain additional stabilizers. (R. 40 at 11.) Mentholatum objects that the plaintiffs advocate for "an alteration of the monograph," (R. 41 at 10), which permits BPO at a 10% concentration, without also requiring an antioxidant or other stabilizer. *See* 21 C.F.R. § 333.310. The Court finds Mentholatum's argument persuasive—the plaintiffs' theory of the case would impose a further state law requirement on Mentholatum to produce monograph-compliant products only if they also added a separate ingredient appearing nowhere in the monograph. This is inconsistent with the preemptive effect of the FDCA and FDA regulations on OTC drug manufacturing, which forbid state regulations not "identical" to federal requirements. 21 U.S.C. § 379r(a).

As such, the plaintiff's claims must fail as inconsistent with the federal laws and regulations that govern OTC drug production and labelling. Because Plaintiff's claims are preempted by federal law they cannot be cured by amendment. Therefore, leave to replead would be futile and within this Court's discretion to withhold. *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023).

Date: January 17, 2025

JEREMY C. DANIEL
United States District Judge